**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Robert A. Hill,

    Plaintiff,

v.

Walmart Inc., a Delaware corporation,

    Defendant(s).

Civil Action No. _____

## COMPLAINT

Plaintiff Robert A. Hill ("Hill" or "Plaintiff"), as and for his Complaint against Defendant Walmart Inc. ("Walmart" or "Defendant"), states and alleges as follows:

### IDENTIFICATION OF THE PARTIES, JURISDICTION, AND VENUE

1. Walmart—a Delaware Corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716—is a sophisticated business entity engaged in the business of conducting retail stores ("Walmart Stores") around the United States, including within the State of Colorado.

2. At times relevant to this complaint, Hill was a resident of the state of Colorado engaged as a property tax representative by Fortune 500 companies and local businesses alike throughout the United States. Hill also is an attorney licensed to practice law in the State of Minnesota, where he maintains a law practice focused on property-tax litigation. Hill moved his place of residence to Colorado in December of 2016, before relocating to the

1

State of New Mexico in December 2020.[1]  As set forth herein, Hill was retained by the Defendant as agent to represent its interests in *in rem* proceedings related to the taxation of real estate and improvements to the same, including personal property, that were owned by the Defendants and located in Wisconsin and Colorado.

3. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that:

   a. At times giving rise to this action, Hill was an individual citizen of Colorado and Walmart was (and is) a corporate citizen of Delaware (place of incorporation) and Arkansas (principal place of business); and

   b. The amount in controversy exceeds $75,000, exclusive of interests and costs, as more fully expressed below.

4. Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted below occurred in this judicial district.

5. As noted, as part of Hill's property tax consulting/law practice, he represents corporate entities—including Walmart—in challenging property-tax assessments for their locations in multiple states. These challenges included the 2017, 2018, 2019, and 2020 assessments for Walmart's real property located in Colorado, Minnesota, and Wisconsin; and the 2017, 2018, 2019, and 2020 assessments of Walmart's personal property located in Colorado.

---

[1] Plaintiff, along with his wife, still owns property in Colorado, specifically a farm in the town of Paonia, Colorado, and by virtue of his property ownership he will retain his status as a Colorado resident for another six (6) months.

6. Hill's representation focuses on appeals and other undertakings on behalf of his clients to equitably determine the value of the property for property tax purposes. This process involves both work at an administrative level and, at times, litigation before either a trial court or the administrative tax court serving taxpayers in the State of Minnesota.

7. In addition to serving as legal counsel for owners and taxpayers in the State of Minnesota, Hill has been extensively involved on the administrative side of this practice as agent-in-fact for his clients in other states where he is not admitted to practice law, including Colorado and Wisconsin.

8. In this regard, Hill's agency agreement with Walmart requires him to operate and control all levels of property tax appeals on behalf of his principal (here Walmart), including, where appropriate, hiring legal counsel to represent Walmart and working closely with Walmart's legal counsel in Colorado and Wisconsin to ensure the success of Walmart's property tax program.

9. To date, the cumulative savings accomplished by Hill on behalf of Walmart in Colorado, Minnesota, and Wisconsin exceeds $23,287,500. This does not include the scheduled or prospective savings that can or will be realized by Walmart as a result of Hill's efforts or representation.

10. The total savings yet to be accomplished on cases governed either by the terms and conditions of Hill's agency agreement with Walmart (Minnesota and Wisconsin), or based on the legal and/or equitable principles governing the reasonable value of Hill's property tax services to Walmart in Colorado from 2017 through 2020, totals an estimated $10-15 million beyond the savings-to-date achieved by Hill on behalf of Walmart.

11. Moreover, in accordance with his obligations under the parties' Agency Agreement, Hill has expended in excess of $2,405,306.92 on Walmart's behalf in attorney fees, expert witness fees, filing fees, and other reimbursable costs necessary to achieve both the $23+ million in tax savings to-date and to preserve Walmart's ability to accomplish future tax savings on the 180+ stores/properties Hill managed successfully for Walmart from April of 2017 through to the present.

## FACTUAL BACKGROUND

12. Beginning in March of 2017, Walmart retained Hill and his firm, Robert Hill Law, Ltd. to serve as its attorney of record and as its agent-in-fact for certain tax appeals in Minnesota. In this capacity, between 2017 to 2020, Hill filed over 300 appeals (administrative and otherwise) and achieved over $10,500,000.00 in tax savings for Walmart in the State of Minnesota.

13. As part of his retention as counsel in Minnesota, Hill and Walmart entered into a written agreement setting forth the terms and conditions of their business relationship. (A copy of that agreement is attached hereto and incorporated herein as **Exhibit A**). In addition to being entitled to receive, as compensation for his services, twenty percent (20%) of the total tax savings for Walmart, Hill was entitled to be reimbursed for fees and expenses he advanced as payment on the files.

14. In prosecuting the Minnesota actions on behalf of Walmart, Hill was informed by the managers in charge of Walmart's property tax program at the time that Walmart was not going to advance any fees, costs, or expenses associated with prosecuting its claims. Rather, these all were to be deducted from any rebate or recovery achieved by Hill on

4

Walmart's behalf, with Hill entitled to reimbursement from Walmart as stated at pp. 6-7 of Exhibit A.

15. Following these instructions, Hill prosecuted/settled over 250 cases in which he received property tax refunds, deducted his fees and third-party expenses, then sent to Walmart the remainder of any refunds not already accounted for/spent on Walmart's behalf when a particular case settled or was dismissed as part of a settlement agreement with a particular municipality.

16. In each instance, Walmart's property tax managers: (a) approved the settlement offer extended to Hill (or Walmart's Wisconsin or Colorado counsel) on Walmart's behalf; (b) received accountings from Hill regarding the full amount of every settlement (and were provided a copy of the same); and (c) approved and accepted the "total savings" amounts that were sent by Hill. The parties followed this pattern and practice, without objection, from March of 2017 until late March 2020.[2]

17. In 2017, Walmart requested that Hill create a property tax appeal program for Walmart in Wisconsin. When making this request, Walmart was aware that Hill was not licensed as an attorney in Wisconsin and therefore could only handle the agency/administrative portion of Walmart's overall tax appeal program. This arrangement differed from Minnesota, where Hill could perform both the administrative and legal functions.

---

[2] Because the Minnesota claims are governed by Minnesota statute (and involve lien rights that the Minnesota Courts are empowered to resolve), there are no allegations arising from Hill's representation of Walmart in Minnesota. However, Hill's claims for his representation in Wisconsin and Colorado are presented in this action.

18. For a brief while in early 2017, Hill was successful in obtaining reductions of Walmart's real property assessments in Wisconsin through the municipal/administrative Board of Review ("BOR") process.

19. However, it was not long before Wisconsin BORs began routinely denying Hill's application(s) for administrative reductions in Walmart's real property taxes on over 60 Wisconsin properties.

20. Hill advised Walmart's property tax managers at that time (2017) that the wisest course to take to achieve further reductions was for Walmart to engage a Wisconsin law firm to file "refund suit" litigation to place Walmart in the procedural posture of being able to negotiate further reductions in its assessments. Walmart agreed to have Hill hire a competent Wisconsin law firm to assist Hill in achieving further property tax savings for Walmart in Wisconsin. Walmart's property tax management at the time asked Hill to continue to represent it as its agent and Hill agreed to do so.

21. As Walmart's agent in Wisconsin, Hill reviewed, recommended, coordinated, and settled dozens of claims, all subject to Walmart's oversight and approval. To the extent needed, Hill, with the consent of Walmart, obtained local counsel to assist in prosecuting hundreds of appeals in the Wisconsin Circuit Courts.[3]

22. As with Minnesota, before there was any settlement reached (or many times before any action was undertaken), Walmart was advised and consented to, or not, the proposed settlement or plan for appeal. For every settlement, Hill followed the same pattern and practice: Walmart did not advance or pay for any costs, expenses, or fees before a

---

[3] Hill is co-counsel on a select few cases in Wisconsin being admitted to each case pro hac vice.

6

settlement. Rather, after receiving and approving a settlement or rebate, Hill's costs, fees, and expenses were deducted from any proceeds that were paid. This pattern and practice was followed from 2017 until March 2020 without objection.

23. Initially, Hill's compensation was to be twenty-three percent (23%) of Walmart's total savings in Wisconsin, but the parties negotiated that amount back to twenty percent (20%), consistent with their pattern and practice in Minnesota. And again, like Minnesota, Hill signed an agreement and forwarded the same to his contacts at Walmart. There never has been a fully signed agreement returned. Regardless, the parties proceeded forward following the same pattern and practice as they utilized on the Minnesota cases-only without a written agreement.

24. In May of 2018, Walmart requested that Hill expand his representation of it with the inclusion of Colorado. Like Wisconsin, Hill would serve as its agent (not as an attorney) pertaining to the assessment on real property and personal property located in all counties throughout the State of Colorado. However, this grant of agency was different than the one that he had in Wisconsin: Hill was afforded all right to act upon Walmart's behalf. This included, but was not limited to, the power to investigate, review, initiate, settle, and dismiss any case for Walmart or its subsidiaries. The agency grant had a term through all appeals or settlements for the 2017, 2018, 2019, and 2020 assessments of Walmart's personal and real property in Colorado.

25. This authorization and appointment was confirmed in writing through a letter of authorization dated February 25, 2019, and executed by Wayne Hamilton, Walmart's Vice

President for Taxation, on February 26, 2020 (the "Letter of Authorization"). A true and correct copy of the Letter of Authorization is attached as **Exhibit B**.

26. Under the Letter of Authorization, Hill was authorized to "act on behalf of [Walmart] as agent in all matters pertaining to the assessment on real property located in all counties throughout the State of Colorado, and to review any and all documents relating to the assessment and taxation of the property."

27. Hill was explicitly authorized to "access all information and material that would be available to [Walmart]" and "sign Personal Property Statements."

28. Hill was given "full authority to act in connection with the filing of protests, file principal's application of equalization, including withdrawal of such application, the ability to enter into a stipulated agreement as to value, and settlement of all related legal issues for the parcels and tax years [of 2017, 2018, 2019, and 2020]."

29. The Letter of Authorization stated that the "authorization will end at the time the assessment appeals application is withdrawn or reached its conclusion through the assessment appeals process." The Letter of Authorization contained no other termination language.

30. Prior to the Letter of Authorization being executed, Hill and Walmart, with the exception of the expanded authority, followed the same pattern and practice. Hill would review, coordinate, and oversee the appeals process from the County level to the Colorado State District and Appellate Courts. Like Wisconsin, because he was not licensed in Colorado, Hill was required to hire counsel as needed. And finally, like Minnesota and Wisconsin, Hill would have Walmart review and approve all settlements and thereafter receive and

accept the net proceeds of that settlement after all of the fees, costs, and expenses were deducted. Hill, in fact, chose to continue to retain the Colorado attorney that Walmart had been using (and paying) for its court filings and appearances.

31. This same practice continued after the Letter of Authorization was executed. Based on the pattern and practice of the parties, Hill's payment for his services was calculated at 20% of the savings/refunds that Walmart received, plus reimbursement for any expenses that Hill had advanced on Walmart's behalf. The remainder would then be sent to Walmart, which cashed these checks without objection.

32. At the beginning of 2020, as the success of Hill's work in Minnesota, Wisconsin, and Colorado continued, Hill was held out, by Walmart, as an example of how to best approach valuations and appeals of the same. By way of example only, in early 2020, Hill was flown to Walmart's headquarters where he was featured on a panel of other practitioners discussing their representation of Walmart, and the process (and success) of the tax appeals process.

33. Shortly after this appearance and the victory lap in Bentonville, Walmart, for reasons unknown to Hill, unilaterally decided that the past relationship that the parties had enjoyed no longer worked for it. In particular, despite the pattern and practice, Walmart wanted to be more involved in the decision making at the ground level. It determined that it no longer wanted to have Hill represent it in Minnesota (though that decision was made a couple of months after the change in philosophy), that all local counsel in Wisconsin and Colorado should report directly to Walmart and, to Hill's great surprise, that he was to curtail (and later wind up) his representation of Walmart.

34. Walmart also unilaterally determined that it had been paying Hill too much. Specifically, despite enjoying over $24 million in reduced tax liability on savings produced by and paid for solely through property tax refund checks, Walmart determined that Hill would no longer be entitled to deduct his fees and costs from the rebate checks but rather the same should be paid from his 20% portion from the proceeds. Not only was this contrary to the parties' pattern and practice but was also contrary to the parties' agreement for the services that Hill was to provide to Walmart.

35. Walmart, despite having access to and copies of all the required documents, demanded that Hill provide it with an accounting covering all 300 some stores/properties Hill was charged with overseeing for property tax purposes. Hill complied and provided an accounting in April 2020. Walmart promptly reworked the numbers provided and asserted that Hill had been overpaid and "owed" Walmart approximately $3,000,000. He had been, according to Walmart, wrongfully deducting costs and expenses (and attorney's fees) from Walmart's portion of the tax savings/refunds.

36. Hill, while disagreeing with the new assessment, was keen on preserving and expanding the relationship with Walmart. As such, he agreed to an initial repayment of $1,600,000 (which consisted of handing over $1,100,000 in rebates that Hill was holding in trust and repaying 500,000 for attorneys' fees that Walmart had independently agreed to pay but demanded to be returned).

37. However, the reconfiguring of the relationship did not stop there. Walmart began to withhold payment for Hill's services, in Colorado and elsewhere, as well as stopped

making payments to the local attorneys Hill hired on Walmart's behalf and the private appraisers and/or experts whom Hill had engaged to work on Walmart's behalf.

38. As a result of Walmart's repeated failure to make timely payments to private appraisers and/or experts retained by Hill, such private appraisers and/or experts have stopped working on Hill's cases—for Walmart or other clients—to the detriment of Hill and his clients around the country. This includes, of course, Walmart.

39. In August 2020, Walmart requested that Hill cease all activities on behalf of Walmart in Minnesota and Wisconsin including withdrawing in all cases where he appeared to be attorney of record. Walmart further instructed its attorneys in those states (all of whom Hill retained on behalf of Walmart) to not discuss or disclose the status of any of the remaining cases with Hill. Hill agreed but continued to work on the cases to ensure that there was a smooth transition and/or follow through on the settlements that he had reached.

40. For Hill's representation of Walmart in Colorado, Walmart did not demand that he withdraw but sought to curtail the broad scope of his agency agreement by demanding that he work through local counsel and wind up his representation. This meant winding up the representation of Walmart for the years that he agreed to represent them. Most recently, however, and contrary to their understanding, Walmart has contacted certain representatives of various counties in the State of Colorado alleging (despite the clear language of the Letter of Authorization) that Hill did not have authority to enter into certain settlements. Regardless, the termination occurrence specified in the Letter of Authorization has not yet occurred, as certain assessments on Walmart Stores in the State of Colorado for tax year 2020 have not yet been "withdrawn or reached [their] conclusion

through the assessment appeals process." However, honoring this request, he worked to finalize those settlements that he had reached on behalf of Walmart to, again, ensure a smooth transition. Walmart was aware of and approved these activities.

41. Hill has, at all times, acted in Walmart's best interests and dutifully, competently, and effectively performed his obligations under his grant of agency in Wisconsin and the Letter of Authorization for Colorado (as well as his retention as counsel in Minnesota). It is estimated that, when complete, Hill will have saved Walmart in excess of $20.5 million in Wisconsin and Colorado in terms of real and personal property tax savings and/or refunds over the course of the authorization.[4]

42. Based on the pattern and practice of the parties, Hill's fee on these actual and anticipated savings totals $2 million for work performed in Wisconsin, and an additional $2.5 million for work performed in Colorado based on the actual and anticipated savings achieved by Hill for Walmart to-date.[5]

43. According to records maintained by Hill, he has expended an additional $2,405,000 in costs and expenses related to his agency relationship with Walmart in Wisconsin, Minnesota, and in Colorado to which—according to the pattern and practice of the parties—he is entitled to reimbursement.

---

[4] When Minnesota's savings are added to the total, the savings realized by Walmart are in excess of $24 million to date.

[5] Hill has received nearly $825,000 in refunds from various counties in Colorado (along with approximately $50,000 from Blue Earth County in Minnesota), which have been deposited into his law firm's trust account. Hill is ready, willing, and able to transfer some or all of this money to the Court to be held in trust until the proper amount of fees owed to Hill may be determined. In addition to these amounts, there is an estimated $1,500,000 in proceeds that will also need to be deposited into Court that will be issued from certain Colorado counties that are subject to dispute.

44. To date, Walmart has only paid Hill a fraction of what he is owed for his work in Wisconsin and Colorado.

## COUNT ONE – BREACH OF CONTRACT (Colorado)

45. Hill realleges all of the preceding paragraphs of the Complaint as if fully stated herein.

46. Under the Letter of Authorization, Hill was appointed as an agent of Walmart wherein he was given full authority to act on Walmart's behalf in connection with the filing of protests; file principal's application of equalization, including withdrawal of such application; and enter into stipulated agreements as to value and settlements of all related legal issues for Walmart Stores for Tax Years 2017-2020 in Colorado.

47. On the past pattern and practice of the parties, and the actual pattern and practice of the parties for Colorado up to April 2020, Hill was to receive payment in the amount of 20% of the savings, plus reimbursement of certain costs and expenses.

48. Hill fully performed under the Letter of Authority, securing in excess of $8 million in savings for Walmart in Colorado to date, with an additional $4 million in savings anticipated.

49. Walmart has breached the Letter of Authority and the contract thereon by, among other things:

    a. failing to pay Hill the fees to which he is owed;
    b. failing to either pay the experts directly or reimburse Hill for those expenses; and
    c. falsely representing to representatives of one or more counties in the State of Colorado that Hill did not have authority to enter into settlements, putting Walmart's tax savings (and Hill's fees for those savings) at risk.

50. As a direct and proximate result of Walmart's breach of its obligations pursuant to Hill's agency relationship, Hill has been damaged in an amount in excess of $500,000—the exact amount to be proven at trial—and is entitled to payment thereof.

## COUNT TWO – BREACH OF CONTRACT (Wisconsin)

51. Hill realleges all of the preceding paragraphs of the Complaint as if fully stated herein.

52. Under the grant of agency authority for Wisconsin, Hill was appointed as an agent of Walmart wherein he was given full authority to act on Walmart's behalf in connection with the filing of protests and appeals related to the assessed values of the Walmart Stores in Wisconsin for Tax Years 2017-2020.

53. On the past pattern and practice of the parties, and upon the actual pattern and practice of the parties for Wisconsin up to April 2020, Hill was to receive payment in the amount of 20% of the savings, plus reimbursement of certain costs and expenses.

54. Hill fully performed under his grant of agency, securing in excess of $6 million in savings for Walmart in Wisconsin to date, with an additional $6 million in savings anticipated.

55. Walmart has breached its grant of agency and the implied contract thereon by, among other things, failing to pay Hill the fees to which he is owed and failing to either pay the experts directly or reimburse Hill for those expenses.

56. As a direct and proximate result of Walmart's breach of its obligations pursuant to Hill's agency relationship, Hill has been damaged in an amount in excess of $500,000—the exact amount to be proven at trial—and is entitled to payment thereof.

## COUNT THREE – UNJUST ENRICHMENT

57. Hill realleges all of the preceding paragraphs of the Complaint as if fully stated herein.

58. As a result of Walmart's failure to pay Hill in accordance with the pattern and practice of the parties, as discussed above, Walmart has been unjustly enriched by receiving the benefits of Hill's work without paying for such services.

59. It is unjust and inequitable for Walmart to retain the benefits of Hill's services at Hill's expense.

60. As a direct and proximate result of Walmart's unjust enrichment, Hill has suffered damages in an amount in excess of $500,000—the exact amount to be proven at trial—and is entitled to payment thereof.

## COUNT FOUR – PROMISSORY ESTOPPEL

61. Hill realleges all of the preceding paragraphs of the Complaint as if fully stated herein.

62. Hill and Walmart, through the course of their relationship, established a pattern and practice of payment for Hill's services for each individual case that he undertook on Walmart's behalf. Namely, Walmart did not advance or pay for any costs, expenses, or fees before a settlement. Rather, after receiving and approving a settlement or rebate, Hill's costs, fees, and expenses were deducted. This pattern and practice was followed from 2017 until March 2020 without objection.

63. Hill, in reliance on Walmart's promise to continue with this pattern and practices, undertook to represent Walmart in hundreds of matters and cases, advancing costs and fees to further Walmart's interests.

64. Walmart, knowing and intending that Hill relied on its promise and did so to his detriment, took advantage of Hill and has refused to pay either his current fees (including costs and expenses) as well as retroactively applying a different standard than the parties' pattern and practice, and demanding that Hill reimburse it for fees and expenses previously (and correctly) deducted.

65. It would be unjust for Walmart to renege on its promise and now apply a different pattern and practice to the parties' agreement and not pay Hill for the full amount that is due to him for his agency work representing Walmart in Wisconsin and Colorado.

## COUNT FIVE – QUANTUM MERIUT

66. Hill realleges all of the preceding paragraphs of the Complaint as if fully stated herein.

67. Hill, at the direction and behest of Walmart, undertook to represent its interests in Wisconsin and Colorado in real and personal property tax adjustments, appeals, and cases. He did so with the specific understanding, based on the parties' pattern and practice, that he would be entitled to receive a percentage of the benefit that he provided to Walmart and be reimbursed for his expenses for such undertakings.

68. Walmart, understanding and explicitly agreeing to the same, has benefited from Hill's work and obtained for itself millions of dollars in savings. It did so without any expenditure of monies paying only for Hill and his fees and expenses from the savings that Hill earned for it.

69. Hill has provided value through his services and expenditures to Walmart that are valued in the millions of dollars, but Walmart has refused to pay for the same. Walmart has also changed the pattern and practice of the parties and, through an internal audit process, has

retroactively determined that the parties' past pattern and practice, which Walmart approved of and took advantage of for years, required Hill to reimburse it for fees and expenditures that he rightfully deducted from the savings he obtained for Walmart.

70. Under these circumstances, it would be unjust for Walmart to retain the benefit of Hill's services and expenditures from which it has benefited without paying for the same.

### COUNT SIX - CIVIL THEFT

71. Hill realleges all of the preceding paragraphs of the Complaint as if fully stated herein.

72. Walmart, without right or justification, has knowingly retained and withheld certain monies that are owed to Hill pursuant to the Letter of Authorization.

73. Walmart's purpose in doing so is specifically to deprive Hill of the benefit of such monies that are owed to him under the Letter of Authorization.

74. The actions of Walmart are intentional, wrongful, and violate Colorado's Civil Theft Statute (CRS Section 18-4-401, et seq.).

75. As a direct and proximate result of Walmart's unjust enrichment, Hill has suffered damages in an amount in excess of $500,000—the exact amount to be proven at trial—and is entitled to payment thereof.

76. In addition, pursuant to Colorado's Civil Theft Statute, Hill is entitled to treble damages and an award of attorney's fees and costs of the action. *See* CRS § 18-4-405.

**WHEREFORE,** Hill prays for relief from the Court as follows:

1. For a judgment in favor of the Plaintiff and against Defendant in an amount in excess of $500,000, the precise amount to be determined at trial;

2. For judgment in favor of Plaintiff and against Defendant in an amount of treble damages suffered by Plaintiff as a result of Defendant's violation of the Colorado Civil Theft Statute;

3. For an award of costs, disbursements, and attorneys' fees to Plaintiff to the fullest extent allowed by law; and

4. For such other and further relief as the Court deems fair, just, and equitable.

Respectfully submitted,

MADIGAN, DAHL & HARLAN, P.A.

Date: January 16, 2021     By: *s/ Megan J. Kunze*
Megan J. Kunze (Colorado Bar #47672)
kunze@mdh-law.com

-and-

Thomas P. Harlan, *pro hac vice* anticipated
Christopher W. Bowman, *pro hac vice* anticipated
222 South 9th Street, Suite 3150
Minneapolis, MN 55402
Telephone: (612) 604-2000
Facsimile: (612) 604-2599
harlan@mdh-law.com
bowman@mdh-law.com

*Attorneys for Plaintiff Robert A. Hill*